UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MICHAEL DAVID YOURAVISH**,                    Civil Case No. 1:14-CV-00262-KI

                Petitioner,

                          OPINION AND ORDER

            v.

**STEVE BROWN**,

                Respondent.


       Erick W. Ward
       Ward Grover, LLP
       516 SW 13th Avenue, Suite 201
       Bend, Oregon  97702

             Attorney for Petitioner

       Ellen F. Rosenblum
       Attorney General

Kristen E. Boyd
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon  97301-4096

　　　　　Attorney for Respondent


KING, Judge:

Petitioner, currently incarcerated by the Oregon Department of Corrections, brings this

habeas corpus proceeding pursuant to 28 U.S.C. § 2254.  For the reasons below, I deny his

amended petition [22] and dismiss this proceeding with prejudice.

## BACKGROUND

Petitioner Michael David Youravish and his wife, Margaret Youravish,[1] adopted nine

children during their marriage.  They separated in late 2006 and shared time with the children;

petitioner had joint custody with 25 percent parenting time.  Petitioner eventually moved to

Bandon and mother remained in Eureka.  After the camping trips described below, the four

teenage children wanted, for a period of time, to move in with their father.

The incidents of abuse took place a few months after petitioner moved.  In June 2007,

daughter J,[2] age 14, and son R, age 16, visited petitioner in Bandon for two weeks.  During the

visit, petitioner took J and R camping overnight.

J and R both testified at trial.  The details differed somewhat between J's and R's

testimonies and between their trial testimonies and earlier statements.  In general, they testified at

---

[1]  I will refer to Margaret Youravish as mother.

[2]  To protect their privacy, I will use the children's first initials, including when quoting
testimony.

trial that Petitioner allowed them to drink beer and Mike's Hard Lemonade on the trip, and Petitioner drank Mike's Hard Lemonade on the drive to the campsite. Once at the campsite, Petitioner told a neighboring camper, Josh, that it is okay if Josh has sex with J. Later in the evening around the campfire, Petitioner sat down behind J on the picnic bench, began to rub her stomach, and inserted his hand inside her bathing suit bottom, reaching very close to her vagina. She blocked his hand from going further, stood up, and walked away. Petitioner apologized to J, told her he did not mean to get that low, and asked her not to tell her mother or anybody else. The trip ended without any other inappropriate behavior.

Another group of the children visited petitioner over the July 4th weekend in 2007. Petitioner took his son M, age 15, daughter B, age 14, and daughter A, age 4, on another overnight camping trip. Again, M's and B's trial testimonies differed somewhat in the details from each other and from their own earlier statements. Generally, Petitioner again let his teenage children drink beer and Mike's Hard Lemonade on the trip. B went in the tent to change from the wet clothes she wore swimming. Petitioner followed B into the tent, tried to touch her breasts, performed oral sex on her, and eventually had sexual intercourse with her. At some point, M also came into the tent and saw Petitioner having intercourse with B.

Petitioner testified to deny he did anything inappropriate. The defense theorized mother caused the children to fabricate their reports of abuse because she did not want the children to move to their father's home after the divorce. Two motives support this theory. First, mother stayed at home and wanted to keep her large group of children together and living with her. Second, the family received about $7,000 a month in adoption assistance for these children. If

some of the children moved in with petitioner, the assistance associated with those children

would be paid to him.  Mother had no source of income other than the adoption assistance.

A jury convicted petitioner of:

Count One:  Attempted Sexual Abuse in the Third Degree (ORS 163.415, ORS 161.405) in a twelve to zero vote;

Count Two:  Rape in the First Degree (ORS 163.375) in a ten to two vote; and

Counts Four and Five:  Sexual Abuse in the Third Degree (ORS 163.415), both in a ten to two vote.

The jury acquitted petitioner of Count Three, Sodomy in the First Degree (ORS 163.405), in a two to ten vote.

The court sentenced petitioner as follows:

Count One:  30 days in the county jail with credit for time served;

Count Two:  100 months' imprisonment followed by 140 months post-prison supervision;

Count Four:  12 months in the county jail, concurrent with Count Two; and

Count Five:  12 months in the county jail, concurrent with Counts Two and Four.

On direct appeal, petitioner raised a single claim based on the lack of a unanimous

verdict.  The Oregon Court of Appeals granted respondent's request for summary affirmance

after finding that petitioner's appeal failed to present a substantial question of law.  The Oregon

Supreme Court denied his petition for review.

Petitioner filed a petition for post-conviction relief ("PCR").  The amended petition alleged a claim of ineffective assistance of trial counsel on sixteen grounds.  After a trial, the PCR court denied relief.

Petitioner appealed the PCR decision on the grounds of ineffective assistance of counsel when trial counsel (1) failed to object to mother's testimony that she believed the children; (2) failed to object to testimony that petitioner drank alcohol while driving; and (3) failed to stress during closing argument the inconsistencies between B's and M's testimony.  The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied his petition for review.

Petitioner then timely filed this petition for habeas corpus in federal court.

## LEGAL STANDARDS

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The state court's findings of fact are presumed correct, and a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Section 2254(d) is a "'guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'"  Hibbler v. Benedetti, 693 F.3d 1140, 1148 (9th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 101, 131 S. Ct. 770 (2011)) (additional internal quotation omitted).  "'[T]he question under AEDPA is not

whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold.'" Id. at 1146 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).

A state court acts "contrary to" clearly-established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495 (2000).

A state court decision is an "unreasonable application" of clearly-established federal law if the court: (1) identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case; or (2) either unreasonably refuses to extend the governing legal principle or unreasonably extends it to a new context where it should not apply. Id. at 407, 413. Under this standard of review, a federal court may not issue a writ of habeas corpus because it concludes the state court applied clearly-established federal law erroneously or incorrectly. The state court decision must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

## DISCUSSION

Petitioner alleges four claims for relief: (1) petitioner was denied his Sixth Amendment right to a unanimous jury verdict; (2) petitioner was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to object to mother's testimony to the effect that she believed her children's claims of abuse; (3) petitioner was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to object to testimony that petitioner drank alcohol while driving; and (4) petitioner was denied his Sixth

Amendment right to effective assistance of counsel when trial counsel failed during closing

argument to draw the jury's attention to inconsistencies in the testimony of B and M.

Am. Pet. for Writ of Habeas Corpus 6-7, ECF No. 22 [hereinafter Petition].

I.      Right to a Unanimous Jury Verdict

        Petitioner alleges he is entitled to habeas relief because the trial court denied his Sixth

Amendment right to a unanimous jury verdict.  Petitioner acknowledges, however, that existing

United States Supreme Court precedent forecloses habeas relief.  See Apodaca v. Oregon, 406

U.S. 404, 406, 92 S. Ct. 1628 (1972) (a state court criminal conviction by a less than unanimous

jury does not violate the Sixth Amendment right to trial by jury made applicable to states by the

Fourteenth Amendment); State v. Bowen, 215 Or. App. 199, 202, 168 P.3d 1208 (2007)

(Apodaca remains good law after the rulings in Blakely v. Washington, 542 U.S. 296, 301, 124

S. Ct. 2531 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000)).

Petitioner presents this ground to preserve his appeal rights and in a good-faith belief that

existing precedent should be reconsidered and overruled.  He argues the right to a unanimous

jury verdict must be incorporated to the states because it is fundamental to the American scheme

of justice.

        I am bound by Apodaca.  Accordingly, I deny Claim One seeking habeas relief based on

the right to a unanimous jury verdict for the reason that the state court's decision is neither

contrary to, nor an unreasonable application of, clearly established law.

II.     Ineffective Assistance of Counsel

        Petitioner argues trial counsel provided ineffective assistance in three different ways:

Page 7 - OPINION AND ORDER

Claim Two–by failing to object to mother's testimony to the effect that she believed her children's claims of abuse;

Claim Three–by failing to object to testimony that petitioner drank alcohol while driving; and

Claim Four–by failing during closing argument to draw the jury's attention to inconsistencies in the testimony of B and M.

Respondent contends the PCR court's decisions denying the claims are neither contrary to nor unreasonable applications of Supreme Court precedent, are supported by the record, and are entitled to deference.

A.    Applicable Law

To prevail on a claim of ineffective assistance of counsel, petitioner must show both (1) that the attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 688 (1984). A defendant is prejudiced by counsel's deficient performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Clark v. Arnold, 769 F.3d 711, 725 (2014) (quoting Strickland, 466 U.S. at 694). A reasonable probability is less than a preponderance of the evidence and is a probability sufficient to undermine confidence in the outcome. Kyles v. Whitley, 514 U.S. 419, 434-35 (1995); Strickland, 466 U.S. at 693, 695.

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "might be considered sound trial strategy." Strickland, 466 U.S. at 689. Reasonableness is judged as of the time of counsel's conduct, not in

hindsight.  Id. at 689-90.  The petitioner must identify the acts or omissions of counsel that are

alleged not to have been the result of reasonable professional judgment.  The court must then

determine whether, in light of all the circumstances, the identified acts or omissions were outside

the wide range of professionally competent assistance.  Id. at 690.  "Judicial scrutiny of counsel's

performance must be highly deferential."  Id. at 689.

> Establishing that a state court's application of Strickland was unreasonable
> under § 2254(d) is all the more difficult.  The standards created by Strickland and
> § 2254(d) are both "highly deferential," [Strickland, 466 U.S. at 689], and when
> the two apply in tandem, review is "doubly" so.  [Knowles v. Mirzayance, 129 S.
> Ct. 1411, 1420 (2009).] . . . When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable.  The question is whether there is any
> reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105 (some citations omitted).

B.    Witness Margaret Youravish ("mother")

In Claim Two, petitioner alleges he did not receive effective assistance when trial counsel

failed to object to mother's testimony to the effect that she believed her children's reports of

abuse.

The following testimony occurred during mother's direct examination:

Q.    Now, after you found out about B and J and you'd been to the police and
you'd been to the CAST Center and all of this, at some point in time you got a
restraining order against the Defendant.  Is that right?

A.    Yes.

Q.    And that was to keep him away from the children?

A.    Yes.

Q.    Now, why did you get that order?

A.    The kids told me something.  I believed them.  And until we got everything worked out I wanted them protected.

Ex. to Answer Ex. 104, at 181, ECF No. 21.[3]

Trial counsel explained to the PCR court that she did not think the statement qualified as vouching.  Thus, trial counsel did not think an objection would make a difference, and she wanted to "play up" the idea that mother was motivating the children's testimony.  Ex. 124, at 4.

The PCR court denied relief, ruling:

Mother's–mother's motives were impeached.  She was obviously the one here that it was argued was influencing this and was driving these false complaints.  So, it was then permissible for the DA to further question mother about whether she influenced the children to lie in order to preserve her income.  So, that–those questions were relevant and were appropriate because the door was opened.  Similarly, why she got the restraining order was opened and subject to further questioning by the DA.

Ex. 128, at 20.

Petitioner contends mother's testimony essentially vouched for and bolstered the credibility of the alleged victims.  Petitioner claims the victims' credibility was critical for a conviction because petitioner denied the allegations and there was no physical evidence.  Petitioner also notes the inconsistencies between the children's earlier and later statements and among each other.  Thus, according to petitioner, trial counsel's failure to object to the vouching testimony of the victims' mother was highly prejudicial.

Respondent argues the PCR court correctly perceived that mother's testimony was a response to rebut petitioner's claim that his ex-wife got a restraining order because of the improper motives to gain custody and/or a financial advantage in the divorce.  According to

---

[3]  All exhibits referenced below are Exhibits to the Answer.  When citing to transcripts, I will use the page number of the transcript and not the page number of the exhibit.

respondent, the prosecutor was entitled to rehabilitate mother once her motives were impugned.

Respondent contends the prosecutor offered the testimony only to show why the mother obtained

the restraining order and not to bolster the testimony of her children.

A witness may not give an opinion on whether he believes another witness is telling the

truth. Simpson v. Coursey, 224 Or. App. 145, 151, 197 P.3d 68 (2008). "Put simply, testimony

must assist, not supplant, the jury's assessment of credibility." Id. at 152. (internal quotation

omitted). In Simpson, the lead investigator was asked to describe the demeanor of the 13-year-

old sex abuse victim. In response, he testified he thought the victim was "very honest, very

straightforward." Id. at 148. The court found trial counsel did not provide effective assistance

when he objected to the testimony but did not move for a mistrial or, alternatively, to strike and

for a curative instruction. Id. at 156.

I agree with respondent that the situation before me is closer to that described in Easter v.

Mills, 239 Or. App. 209, 242 P.3d 1212 (2010). There, the 11-year-old sex abuse victim's

mother was asked if she knew of any reason why her daughter would make the allegations up,

and she responded no. Id. at 212. The court held trial counsel did provide effective assistance,

even though he failed to preserve the issue, because the question and answer were not vouching.

Id. at 214. The defense theory was that the victim had a motive to lie. Id. at 215.

> Here, [the victim's] mother was not asked whether she believed that [the victim]
> was telling the truth (nor did her answer reveal whether she believed that [the
> victim] was telling the truth). Rather, she was asked if she knew of any motive
> [the victim] would have to lie.

Id. at 214.

The case before me is similar to Easter in that a witness's motives are in question.  Trial counsel explained in her opening statement petitioner was going through a difficult divorce, and several of the children wanted to live with him rather than with their mother.  This was sufficient to impugn the mother's motives.  The prosecutor then had the right to rehabilitate the mother by asking why she got a restraining order against the husband.  The mother explained she acted to protect her children.  It is true the mother also stated she believed the children.  But evidence which is normally inadmissible may be introduced to explain a witness's state of mind, which is what the prosecutor was exploring when he asked mother why she got the restraining order.  In re Marriage of Fromdahl, 314 Or. 496, 840 P.2d 683 (1992) (although normally inadmissible, father's polygraph report was admissible in child custody dispute to show its effect on the mother's state of mind and to demonstrate her perceptions and responses to the situation were rational and appropriate).

In this narrow context, I conclude mother's testimony was not vouching because its purpose was to rehabilitate her from the motives petitioner argued she possessed which caused her to frame him.  Consequently, trial counsel did not provide ineffective assistance when she failed to object to the testimony.  The PCR court did not unreasonably apply Strickland in denying relief.

In sum, under Harrington, 562 U.S. at 105, there is a reasonable argument that trial counsel satisfied Strickland's deferential standard.  Thus, I deny the second claim seeking habeas relief based on failing to object to mother's testimony for the reason that the state court's decision is neither contrary to, nor an unreasonable application of clearly established law.

Page 12 - OPINION AND ORDER

C.    <u>Testimony about Drinking While Driving</u>

In Claim Three, petitioner alleges he did not receive effective assistance when trial

counsel failed to object to testimony that petitioner drank alcohol while driving.

At trial, J and R testified petitioner drank Mike's Hard Lemonade while driving to the

campsite.  The questioning on this issue was brief–a total of three short questions and answers.

Petitioner brought a broader claim in his amended PCR petition than in his claim before

me.  In the PCR court, he alleged:

> Trial counsel was ineffective in failing to object to the District Attorney
> referring to uncharged conduct throughout the course of the trial.  Specifically,
> trial counsel did not object to the District Attorney continuing to refer to
> Plaintiff's use of alcohol during the alleged incident, including drinking while
> driving and offering alcohol to minors.

Ex. 114, at 5.

Trial counsel explained to the PCR court she did not object because she believed the

testimony was relevant to prove how petitioner was able to abuse his teenage girls.  The PCR

court denied relief, ruling:

> The children's use of alcohol and the Petitioner providing alcohol prior to the
> abuse is relevant to show the steps Petitioner took to make it easier to abuse the
> children.  It's relevant for that purpose.  It's also relevant as to what the children
> and the Petitioner perceived on the night of the incident.  They testified.  Their
> ability to perceive on the night of the incident is also in question.  And that
> testimony becomes relevant.

Ex. 128, at 20.

Petitioner notes he was not charged with driving under the influence of intoxicants.  He

concedes that evidence of his consumption of alcohol was relevant to the question of his ability

to accurately perceive and later recall the events surrounding the alleged sexual abuse.  But he

argues evidence of drinking *while driving* was irrelevant to these points or anything else at issue in the trial.  Because of the public disdain for drinking while driving, petitioner argues the testimony that he did so, particularly when his children were in the car, created a substantial danger the jurors would condemn him morally and conclude he has a criminal propensity in the nature of a reckless or complete disregard for the law.

Respondent argues the evidence of petitioner drinking while driving was not offered as a collateral bad act but instead was a relevant circumstance surrounding the crimes.  Respondent claims the evidence showed petitioner's efforts to encourage the children to drink, set the tone for the camping trip, showed the means petitioner took to reduce the inhibitions of his children, showed petitioner's uninhibited behavior, and refuted the "happy camping trip" portrayal petitioner's counsel asserted in the opening statement.  Resp. to Am. Pet. for Writ of Habeas Corpus at 17.  Respondent argues the brief evidence was comparable to other evidence of petitioner's intoxication throughout the day which led to the commission of the crimes and thus fell within the exception to propensity evidence in Oregon Evidence Code ("OEC") 404(3).

Under OEC 404(3), "evidence of uncharged misconduct by the defendant is not admissible to prove that the defendant has a criminal character or a propensity to engage in criminal behavior."  State v. Teitsworth, 257 Or. App. 309, 315, 304 P.3d 793 (2013).  Because the state did not offer the evidence to prove intent or the absence of mistake, the court applies a three-part test to determine admissibility:

> "(1) The evidence must be independently relevant for a noncharacter purpose; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that [the] defendant committed it; and (3) the probative value of the uncharged misconduct must not be substantially outweighed by the dangers or considerations set forth in OEC 403."

State v. Blanscet, 230 Or. App. 363, 368, 215 P.3d 924 (2009) (quoting State v. Johnson, 313 Or. 189, 195, 832 P.2d 443 (1992)).

Petitioner does not argue the state offered insufficient proof of the second factor–that petitioner committed the uncharged misconduct of drinking while driving.  The PCR court explained two independent bases for relevance of the evidence of petitioner drinking other than while driving and the children's drinking:  (1)the ability of these witnesses to perceive the events and remember them later; and (2) the steps petitioner took to make it easier to abuse the children. Although the PCR court did not specifically discuss the testimony of petitioner drinking while driving, that testimony is relevant to show the amount of alcohol petitioner consumed.  Thus, it is relevant to his ability to perceive and remember the events.  It is also relevant to an argument that petitioner used alcohol to overcome his own inhibitions prior to abusing his children.

Finally, I conclude the probative value of the drinking while driving evidence is not substantially outweighed by prejudice to petitioner in the nature of the public disdain for drinking while driving causing jurors to condemn him morally and conclude he has a reckless disregard for the law.  The testimony was very brief; the prosecutor did not mention it in closing argument. The testimony of drinking while driving was quite intertwined with the other evidence of alcohol use by petitioner and the children, including that petitioner furnished alcohol to his young teenagers.  I agree with respondent that it helped set the tone of the camping trip for the jury. Moreover, I note the jury acquitted petitioner of one of the five counts charged.  This is proof the jury carefully considered the evidence and did not broadly paint petitioner as a miscreant.

I also note that objecting to evidence such as this can focus the jury's attention on the evidence–a result that would not aid petitioner.

Page 15 - OPINION AND ORDER

Thus, as the PCR court found, trial counsel did not provide ineffective assistance when she failed to object to testimony that petitioner drank while driving to the campsite.

In sum, under <u>Harrington</u>, 562 U.S. at 105, there is a reasonable argument that trial counsel satisfied <u>Strickland</u>'s deferential standard. Thus, I deny the third claim seeking habeas relief based on trial counsel's failure to object to testimony that petitioner drank while driving for the reason that the state court's decision is neither contrary to, nor an unreasonable application of clearly established law.

D.    <u>Closing Argument</u>

The defense theorized the children testified falsely at the request of their mother so she could retain custody in the divorce. In Claim Three, petitioner alleges he did not receive effective assistance when trial counsel failed during closing argument to draw the jury's attention to inconsistencies between the testimonies of M and B. Petitioner argues trial counsel spent a lot of time discussing discrepancies between each child's earlier statements and their trial testimony but inadequately compared one child's testimony to another's testimony.

Petitioner accurately sums up the two inconsistencies as follows:

> B claimed that Mr. Youravish was on top of her through the intercourse. M claimed that B was [on] top of Mr. Youravish. B claimed that M was doing something with his penis while yelling at himself. M claimed that he merely watched for a period while B and Mr. Youravish had sex, and then left the tent.

Pet'r's Mem. of Law at 36.

Trial counsel explained to the PCR court that she believed she adequately pointed out the inconsistencies between M's and B's statements during closing argument. To the extent she held back, trial counsel did not want to "beat up" on the children because she wanted to show that

petitioner loved them.  Jacquot Aff., at 2.  In addition, trial counsel did not want to open the door

for the state to bring in character evidence that would have been very damaging to petitioner's

case.

The PCR court ruled that trial counsel did impeach on prior inconsistent statements.

Respondent contends trial counsel's strategic and tactical decisions about closing

argument fall within the wide range of reasonable professional decisions counsel is permitted to

make, particularly when the victims are children.

I first note trial counsel *did* argue to the jury that M and B testified differently as to

whether B or petitioner was on top during the act of intercourse.  Ex. 105, at 371-72.  In addition,

trial counsel made numerous arguments to impeach the children:

– J told the CAST team petitioner did not touch her vagina but she testified that he did; J

told the CAST team she only had a couple of sips of beer and spit it out but testified she drank

four or five beers; J told the CAST team she had on a bra and underwear but testified she was

wearing a swim suit; and J told the CAST team she first disclosed the abuse to her mother but

testified she told her sister Samantha first.

– B told the CAST team there was a single incident but she testified there were two

incidents separated by several hours; B testified in response to many questions about the details

of the abuse that "she did not know"; B told the CAST team J tried to stop petitioner but she

testified he was playing with himself and having some issue with his penis; B told the CAST

team she only made the phone call about living with petitioner because he and B's grandmother

were listening, but she testified she still wanted to live with petitioner because he was drunk

when he abused her and it would not happen again; and B told the CAST team the camping trip
lasted two days but she testified it was only one day.

    – M could not testify to any details about how he and B and petitioner got into the tent or
how their clothes were removed.

    – R told the police he did not see petitioner do anything to J but he testified he saw
petitioner grab J's breasts; R told the CAST team petitioner told Josh to stay away from J
because she was only fourteen but he first testified he never said that, then clarified petitioner
made the statement earlier in the day and later told Josh it was okay if he had sex with J.

    – All four children testified they talked to Detective Hubbard but he testified he never
interviewed any of them.

> The right to effective assistance extends to closing arguments.
> Nonetheless, counsel has wide latitude in deciding how best to represent a client,
> and deference to counsel's tactical decisions in his closing presentation is
> particularly important because of the broad range of legitimate defense strategy at
> that stage.  Closing arguments should "sharpen and clarify the issues for
> resolution by the trier of fact," but which issues to sharpen and how best to clarify
> them are questions with many reasonable answers.  Indeed, it might sometimes
> make sense to forgo closing argument altogether.  Judicial review of a defense
> attorney's summation is therefore highly deferential–and doubly deferential when
> it is conducted through the lens of federal habeas.

Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1 (2003) (internal quotations and citations
omitted).

    Impeaching children who testified they are victims of sex abuse is a tricky
business–pushing too hard makes counsel look like a bully.  Here, trial counsel did not forgo
impeaching the children; in fact, she argued more than a dozen specific reasons why the jury
should not believe the children's testimony.  There may have been other ways to approach

Page 18 - OPINION AND ORDER

closing argument, but trial counsel's performance did not fall below an objective standard of reasonableness, given the case law's deference to counsel's tactical decisions.  The PCR court did not err in denying habeas relief based on trial counsel's closing argument.

In sum, under Harrington, 562 U.S. at 105, there is a reasonable argument that trial counsel satisfied Strickland's deferential standard.  Thus, I deny the fourth claim seeking habeas relief based on trial counsel's failure during closing argument to draw the jury's attention to inconsistencies between the testimony of M and B for the reason that the state court's decision is neither contrary to, nor an unreasonable application of clearly established law.

E.    Summary

Petitioner further contends that the three instances of inadequate representation, when viewed together, undermines confidence in the verdict.  He claims there is at least a reasonable probability the jurors would have found him more likeable, the children less credible, and ultimately found petitioner not guilty.

Trial counsel was not ineffective on any of the grounds petitioner alleged.  Consequently, considering the alleged grounds together does not undermine my confidence in the verdict.

In sum, petitioner's ineffective assistance of counsel claims fail.  As the PCR court concluded, trial counsel's performance did not fall below an objective standard of reasonableness, especially when I apply the doubly deferential standard of review, as discussed in Harrington, 562 U.S. at 105.  There is definitely a reasonable argument that trial counsel satisfied Strickland's deferential standard.  Accordingly, I deny habeas relief on the basis that the state court's decision is neither contrary to, nor an unreasonable application of, clearly established law.

**CONCLUSION**

Based on the foregoing, I deny petitioner's amended habeas corpus petition [22] and dismiss this proceeding with prejudice.  Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.  <u>See</u> 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

Dated this _____13th_____ day of April, 2015.

 /s/ Garr M. King_____
Garr M. King
United States District Judge

Page 20 - OPINION AND ORDER